# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LORENZO TUCKER

    Defendant.

Case No. 2:08-CR-00025-KJD-LRL

**ORDER**

Presently before the Court for consideration is the Probation Form 12C Petition for Warrant for Offender Under Supervision (#174) ("the Petition"). Probation provided two addendums to the Petition (##183, 198) and Defendant filed three responsive motions (##185, 187 & 193). A subsequent revocation hearing was held in this Court on November 30, 2016.

The Petition and addendums list four violations. The first paragraph of the Petition alleges that Defendant committed child abuse, on or about September 26, 2016 and October 1, 2016. (#174 at p. 1.) Specifically, Probation alleges that Jana Foxworth, the mother of Defendant's son, contacted Probation Officer, Jodona Brown, on October 1, 2016 to inform her that Ms. Foxworth's son told her that Defendant struck him with a belt. Ms. Foxworth further informed Probation that she video recorded Defendant previously striking their son with a belt on September 26, 2016. A copy of the recording was sent to Officer Brown on October 1, 2016.

The second paragraph alleges that Defendant failed to report for drug testing on July 16, 2016, and August 12, 2016.

The first addendum to the Petition (#183) alleges that Defendant failed to answer truthfully all inquiries and follow instructions of the probation officer. Specifically, it is alleged that Defendant failed to truthfully complete the call-in-log for drug testing.

The second addendum to the Petition (#198) alleges commission of another crime, to wit, forgery. Specifically, it is alleged that Defendant filed an Affidavit for Dismissal which contained the forged signature of U.S. Probation Officer, Jodona Brown.

With respect to the child abuse allegations, Defendant's objection is based on the 6th Amendment right to confront an adverse witness, namely the victim, his seven year old son. During Defendant's revocation hearing, Ms. Foxworth testified as to what she observed regarding the child abuse allegations. Specifically, she noted that she videotaped Defendant hitting her son with a belt on September 26, 2016. This video was presented to the Court and admitted into evidence.  Ms. Foxworth also testified to statements her son made to her following the beating of October 1, 2016, specifically: 1) that he said "ow" after Ms. Foxworth patted him on the buttocks, causing her to inquire as to the source of his pain, which he attributed to bruises resulting from being struck by Defendant with a belt; 2) that he stated that he was "scared" of his father; and 3) that bruises on the victim's face, buttocks and back resulted from Defendant striking him with a belt. Ms. Foxworth also testified that she took photos of bruises on her son's face, buttocks and back on October 1, 2016.  She then testified that she sent the photos to Defendant's probation officer, Jodona Brown the same day. These photos were presented to the Court and admitted into evidence.

The crux of Defendant's objection is that Ms. Foxworth's testimony is considered hearsay since her statements were offered in Court to prove the truth of the victim's claim that his father struck him with a belt, forming the basis of the child abuse allegation.  The Government's reason for not

subpoenaing the victim is that the detrimental effects (including fear) of having a seven year old child testify against their parent who is accused of abusing them outweighs Defendant's 6th Amendment due process right to confrontation and that the September 26, 2016 video, standing alone, is sufficient to support the violation alleged in paragraph 1 of the Petition.

The Supreme Court has defined certain minimum due process requirements for parole revocation. Those have since been extended to the revocation of probation. Morrissey v. Brewer, 408 U.S. 471 (1972). Under Morrissey, every releasee is guaranteed the right to confront and cross-examine adverse witnesses at a revocation hearing unless the government shows good cause for not producing the witnesses. Id. at 489; see also Fed.R.Crim.P. 32.1(a)(2)(D) ( "opportunity to question adverse witnesses"). Accordingly, in determining whether the admission of hearsay evidence violates the releasee's right to confrontation in a particular case, the court must utilize a balancing test to weigh the releasee's interest in his constitutionally guaranteed right to confrontation against the Government's good cause for denying it. See United States v. Walker, 117 F.3d 417, 420 (9th Cir.1997)

For example, in United States v. Comito, 177 F.3d 1166, 1168 (9th Cir. 1999), the court considered whether a releasee's right to confrontation may be outweighed where the adverse hearsay testimony consists of a witness reporting another person's unsworn verbal statements - the statements of the victim of the offense which constitute the releasee's alleged violation. Utilizing a balancing test to resolve this issue, the court determined that the weight to be given the right to confrontation in a particular case depends on two primary factors: the importance of the hearsay evidence to the court's ultimate finding and the nature of the facts to be proven by the hearsay evidence. 177 F.3d at 1168. ("'[T]he more significant particular evidence is to a finding, the more important it is that the releasee be given an opportunity to demonstrate that the proffered evidence does not reflect 'verified fact.'...So,

too, the more subject to question the accuracy and reliability of the proffered evidence, the greater the releasee's interest in testing it by exercising his right to confrontation."). Here, the Court considered the fact that the testimony was not that important to the ultimate finding of child abuse because the Court had already viewed the video of Defendant beating the child on September 26, 2016. In other words, the Court could have made its findings of child abuse without reference to the hearsay evidence.

The facts of Comito are easily distinguishable from those of this case. An accusation was made by the victim, the defendant's former girlfriend and roommate, to the defendant's probation officer that defendant used her bank cards, credit cards and checks without her permission. Id. The victim was not present to testify at the revocation hearings. Id. The government stated it intended to offer the testimony of the probation officer regarding what the victim said to him concerning the defendant's use of her cards and checks. Id. The defendant's lawyer objected to the use of this hearsay testimony to prove the violation and asserted that its admission would violate his client's confrontation rights. The court then asked counsel about the circumstances surrounding the victim's absence. Id. According to information received by the government from the victim, she was afraid that she would be harmed by an unknown associate of defendant's should she testify. Id. The court addressed whether or under what circumstances a fear for one's own safety or that of a family member might justify the use of hearsay testimony in a revocation proceeding, but did not base its decision on the resolution of this issue due to the government's failure to offer evidence of any such fear on the part of the absent witness. This lack of evidence ultimately tipped the balance in favor of defendant, however, it can be surmised that introducing the witness' fear of confronting defendant as the reason she did not appear would have formed a factual basis of a stronger argument for the government.

Here, the declarant/victim is a seven year old who had been severely traumatized by his father only five days earlier in the course of a beating which was videotaped and presented to the court. The reason for the beating was because he could not pronounce the word "what" to his father's satisfaction.

Additionally, in Houff v. Blacketter, the admission into evidence of hearsay testimony by a four-year-old victim's mother concerning statements made by the victim did not violate defendant's Sixth Amendment right to confrontation in a prosecution for, inter alia, using a child in a display of sexually explicit conduct. 402 F. App'x 167 (9th Cir. 2010). The trial judge concluded, inter alia, that the mother was a truthful and reliable reporter of the victim's statements and that the victim's description of the events was sufficiently detailed to compel the conclusion that she had no other source of information than personal knowledge. Id.

These two cases are instrumental in the Court's finding that Defendant's 6th Amendment right to confrontation was not violated during his revocation hearing.  The burden of proof in revocation hearings is preponderance of the evidence, thus, the Court has the ability to decide whether hearsay can be admitted to meet the burden of proof.  The Court viewed the video recording of Defendant striking his son repeatedly with a large belt. The Court observed the Defendant standing over the victim with the belt over his shoulder, prepared to strike. The victim was seated on a sofa and was visibly flustered, emotional and overcome with fear.  The fear demonstrated by the victim on the video recording combined with his statement that he was "scared" of his father, as well as the photos of bruises on the victim's face, back and buttocks, comprise significant evidence for a finding of child abuse. Additionally, during the hearing, the Government informed the Court that a separate State case has been filed against Defendant wherein the victim will likely be called to testify against him. The Government did not want to unduly burden the victim with having to testify at this hearing. The Court agrees with

the Government's reasoning that the precarious nature of inviting a 7 year old child to testify against his father for abusing him is not required by the interest of justice. See F.R.C.P. 32.1(b)(1)(B)(iii). Thus, the Court finds that Defendant's 6th Amendment right to confront the victim was not violated.

Defendant also objects to the Government's failure to provide specific statutes from which the new violations, child abuse and forgery, arise. Defendant alleges this failure triggered a violation of his right to be notified of the charges against him pursuant to Fed. R. Crim. P. 32.1. See United States v. Havier, 155 F.3d 1090, 1092 (9th Cir. 1998). Defendant points to United States v. Havier to support this assertion. In that case, defendant was charged with additional violations of the terms of his supervised release. Specifically, probation stated:

> Violation of standard condition # 1: "You shall not commit another federal, state, or local crime during the term of supervision."
> A grade A violation 7B1.1(a)(1).
> On June 4, 1997, the defendant's conduct during his arrest by Tucson Police constituted an offense with the element of eminent [sic] life-threatening danger to law enforcement personnel. Therefore, Havier could have been charged with a "Crime of Violence," per 4B1.2, Application Note 2.

Havier, 155 F.3d at 1092. The Havier court found the wording of this violation inadequate because Havier's violation of "standard condition # 1" alluded only to "another federal, state, or local crime" that had been committed. Id. According to the court, in this type of situation, it would be unrealistic to expect a defendant to predict the specific statute which the government intended to charge him with violating. Id. In fact, during the defendant's hearing the district court judge and counsel themselves appeared to be speculating about which Arizona state law violations could have or should have been alleged in the revocation petition. Id. A variety of offenses were proposed, including felon in possession

of a firearm, assault on a police officer, and reckless display of a weapon. Id. In light of this confusion over the proper charge, the court reasoned that the defendant could not be expected to predict the one statute-A.R.S. § 13-2904-upon which the Government and judge would settle. Id. Nor should he be expected to defend against each and every possible charge. According to the court, "notice of the specific statute guarantees the fairest opportunity for the defendant to isolate the various elements of the crime and present facts in his defense."

The issues presented in Havier are distinguishable from the instant case. Although there are various child abuse and forgery statutes within the Nevada Revised Statutes, this Court finds Defendant had adequate notice as to the *crimes* forming the basis of the new allegations against him. The video recording provided Defendant with adequate notice of the child abuse allegation. It is undisputed that Defendant submitted, for the Court's consideration, a document which included the purported signature of his probation officer, Jodana Brown, that she did not sign. Defendant filed this document pro se and while in federal custody. Both he and his attorney were aware it had been filed electronically by Defendant.

Thus, while the Probation Form 12C Petition and subsequent addendums are silent as to the specific statutes Defendant violated, there is no need for speculation as to the acts upon which the government would rely to support the alleged violations. Further, the most recent 12C Petition Addendum (#198) stating that Mr. Tucker signed and filed an Affidavit for Dismissal, containing the forged signature of the probation officer without her knowledge, consent, or permission, provided the Defendant with adequate notice of the forgery allegation.

Finally, Defendant claims his failure to comply with the drug and alcohol conditions were not material violations. To the contrary, drug testing is an important component of Defendant's supervised

7

release and is at the direction of Probation, not at the convenience of the Defendant. It is not Defendant's prerogative to decide when he will submit to drug testing.

Further, Defendant incorrectly completed 16 out of 21 fields on his required drug testing log. To the extent that he completed the drug testing log incorrectly, based on the facts presented, it is obvious to the Court that after being requested by his probation officer to submit the drug testing log in compliance with the requirement to call in and record the colors each day, he filled the log in after the fact by guessing. He thus failed to comply with the order to complete the drug testing log accurately and truthfully.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Objections to the violations listed in the Probation Form 12C Petition for Warrant for Offender Under Supervision (#174) and subsequent addendums (##183 & 198) are **Overruled**.


DATED this 2nd day of December 2016.

_(signature)_

Kent J. Dawson
United States District Judge